HACKETT v. COMMISSIONER OF IN-
TERNAL REVENUE.
WELLMAN v. SAME.
NICHOLS v. SAME.

Nos. 4155–4157.

Circuit Court of Appeals, First Circuit.
Dec. 18, 1946.

Edward C. Park, of Boston, Mass. (With-
ington, Cross, Park & McCann, of Boston,
Mass., on the brief), for petitioners for
review.

Melva M. Graney, Sp. Asst. to Atty. Gen.
(Douglas W. McGregor, Asst. Atty. Gen.,
and Sewall Key, Robert N. Anderson, and
Robert Koerner, Sp. Assts. to Atty. Gen.,
on the brief), for Commissioner of Internal
Revenue.

Before MAGRUDER, MAHONEY, and
WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

Petitioners, Robert P. Hackett, Arthur O.
Wellman and John H. Nichols, seek review
of the decision of the Tax Court which in
a consolidated proceeding sustained a deter-
mination by the Commissioner of Internal
Revenue of deficiencies in their income tax-
es for the calendar year 1941. Hackett,
Wellman and Nichols were officer-directors
of Nichols & Co., Inc., a Massachusetts cor-
poration.

The facts were all stipulated and were so
found. Only those facts material to an un-
derstanding of the issue will be stated. In
August, 1941, at a meeting of the Board of
Directors of Nichols & Co., Inc. it was re-
solved that the company purchase for the
petitioners single premium refund annuity
contracts "as further compensation for val-
uable services rendered." Pursuant to such
vote the corporation shortly thereafter pur-
chased such contracts paying $25,000, $75,-
000 and $45,000 for annuities for Hackett,

Wellman and Nichols, respectively, and deducted such cost as a business expense in its income tax return for 1941. The annuitants were accorded the right to change beneficiaries but not to assign, alienate or commute the contracts or any payments thereunder. These annuity contracts had no loan or cash surrender value. Payments under the annuities were to commence and did commence in the following year and were not therefore part of a retirement pension plan. The stipulated facts show that no election resided in the petitioners to receive cash instead of the annuity contracts. Regular annual compensation had been voted in March 1941 and since 1936 at least no additional compensation or bonus either in cash or otherwise had ever been voted. At the time of the directors' meeting the petitioners had been advised and they believed that the value of the annuity contracts need not be returned as income in the year in which purchased and that the full amounts received annually under the annuities should be returned in each year received. Consequently, none of the petitioners reported the cost value of his annuity contract as taxable income in his return for that year, but did report in 1942, 1943 and 1944 the full amounts received under the annuities.

The Commissioner determined a deficiency on the ground that the premiums paid for the annuities purchased by the employer were includible in the employees' taxable gross income for 1941 under the provisions of § 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a). This determination was sustained by the Tax Court.

The Commissioner asserts that the premiums paid by the employer in 1941 for the annuity contracts constituted income to the employees in that year within the meaning of § 22(a)[1] of the Internal Revenue Code, since the payments represented additional compensation for services rendered. The August 1941 resolution of the employer's board of directors stated that the annuities were purchased as "further compensation for valuable services rendered"; and petitioners have conceded that the annuity contracts are within the broad language of § 22(a). See Commissioner v. Smith, 1945, 324 U.S. 177, 181, 65 S.Ct. 591, 89 L.Ed. 830. The view that premium payments on employee annuity contracts representing additional compensation constitute taxable income to the recipient has already been sustained by the courts. Hubbell v. Commissioner, 6 Cir., 1945, 150 F.2d 516; Oberwinder v. Commissioner, 8 Cir., 1945, 147 F.2d 255; Brodie v. Commissioner, 1942, 1 T.C. 275. Petitioners do not now dispute the inclusion of the annuity contracts in gross income but seek rather to exclude taxability on grounds allegedly not considered in the above cases. We would have thought that the above cited cases were determinative of the question herein involved. However, the petitioners present an argument against this to which we must give our attention.

We must first consider the theory for including the annuity contracts in gross income since all seem to agree that they are so includible. The petitioners say that they cannot be held to have constructively received the cash paid for the annuity contracts. With this statement we are inclined to agree. Deupree v. Commissioner, 1942, I T.C. 113, is an illustration of the doctrine of constructive receipt as applied to this sort of a situation. Additional compensation in cash had been payable to the employee under a plan for special remuneration. In the taxable year there in question at the taxpayer's direction an annuity was purchased for him with the cash he would otherwise have received. The taxpayer could have had the cash instead; he had the option, and the Tax Court, rightly we believe, held that the employee constructively received the cash used to purchase the annuity. See also McEwen v. Commissioner, 1946, 6 T.C. 130; Freeman v. Commissioner, 1945, 4 T.C. 582. In the instant case the petitioners had no option to receive cash instead of the annuities—they had no right to additional compensation

---

[1] Internal Revenue Code § 22 Gross Income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *."

which they could have directed to be used in this manner. However, the receipt of the annuity contracts constituted an economic benefit conferred as additional compensation which is the equivalent of cash. Hubbell v. Commissioner, supra, 150 F.2d 516 at page 523; 1 Mertens, Federal Income Taxation (1942) § 8.05, p. 380. It is as if the employees were paid in commodities rather than in cash. The significance of this discussion becomes evident later.

 Petitioners rest their argument for nontaxability of the annuity contracts on an implication derived from an interpretation of § 22(b) (2)[2] which provides for certain exclusions from gross income. It is contended that § 22(b) (2) provides for the taxing to these employees of the full amount to be received annually under the annuities and therefore impliedly excludes from gross income the initial value of the annuity contracts, since Congress could not have intended to tax as income both the value of the right to receive payments under an annuity contract and the full amounts actually paid thereunder. This, it is suggested, would be double taxation and presumably not within the intent of Congress. Actually the petitioners here did in 1942 and subsequent years report, and pay taxes on, the full amount of the annuity payments received. It should be observed that this argument for exclusion of the annuity contracts in 1941 rests on a determination of taxability in future years of benefits to be received under those contracts. It could be said that nothing in § 22(b) expressly excludes these annuity contracts from gross income in 1941 and that taxability in subsequent years of the annuity payments is an entirely different question. However, the petitioners' argument does not seem entirely specious. Assuming that taxation in full of the annual payments under the annuities would necessarily imply tax exclusion of the initial value of the annuity contracts, we hold that petitioners' major premise, i. e. interpretation of § 22(b) (2) to provide for full taxability of the annual payments, is not correct.

The petitioners' argument to support full taxability of annuity proceeds rests on three points: (1) Statutory interpretation, (2) long-continued administrative interpretation impliedly confirmed by statutory re-enactment without change, and (3) specific taxability by, and non-retroactivity of, the 1942 amendments indicative of intended change in the law.

The first part of the pertinent sentence in § 22(b) (2), as quoted in footnote 2, includes in gross income the amounts received under an annuity; then there follows the 3 per cent rule preceded by a semi-colon. It is argued that the exception containing the 3 per cent rule does not apply to the petitioners in suit and hence full taxability results, because, as petitioners contend, the "aggregate premiums or consideration paid for such annuity" must be construed to mean "paid by the annuitant for such annuity." If the phrase is construed to mean "paid by anyone for such annuity," the petitioners argue that the exception is as broad as the previous clause. Since it is an exception, it is urged that consistency requires a narrower construction. Moreover the Tax Court is said to have held in Jones v. Commissioner, 1943, 2 T.C. 924 that the construction urged upon us was correct, and further support has been garnered from administrative interpretations and court decisions.

In the first place, we do not believe that, in order to apply the 3 per cent rule to the petitioners' annual annuity payments, the clause must be read as "paid by anyone for such annuity." In Jones v. Commissioner, supra, 2 T.C. at page 934, the Tax Court concluded "that Congress intended to limit

[2] Internal Revenue Code. Sec. 22(b). "Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter. * * * "(2) Annuities, etc. * * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity."

the deduction under section 22(b) (2), supra, to the aggregate premiums or consideration paid by the annuitant except where, as in the Deupree and Brodie cases, supra, the annuitant has been in receipt of taxable income in the year in which the annuity was purchased for him by his employer." Since the Deupree case involved a question of constructive receipt it is not determinative here. Were the instant case one of constructive receipt, the construction "paid by the annuitant" would be sufficient to comprehend within its scope the consideration paid for the annuity which the annuitant had the option of receiving in cash. However, we believe that a construction "paid by the annuitant or by another when such payment is taxable income to the annuitant" would be entirely proper. See 1 Mertens, Federal Income Taxation (1942) § 6.30. Or that "paid by an annuitant" should include not only direct payments but situations where in effect, if not in fact, the recipient paid the consideration.[3] Here, for example, the employees rendered services to the employer who paid the consideration therefor to the insurer for conferring a benefit on the employee.

The petitioners point to several I.T. rulings wherein the Commissioner advised that the amounts contributed by an employer for a retirement annuity did not constitute "consideration paid for such annuity" under § 22(b) (2). But there is no showing there that the payments by the employer would have constituted gross income to the employee in the year or years in which paid. The employees' rights in the annuity may have been forfeitable or contingent. See discussion in Oberwinder v. Commissioner, 8 Cir., 1945, 147 F.2d 255, 258; Cf. Brodie v. Commissioner, 1942, 1 T.C. 275, 284.

This analysis serves to distinguish those cases cited to us by petitioners in which the full amount of annuity payments were held taxable to the recipient because the consideration was paid by another. Pearce v. Commissioner, 1942, 315 U.S. 543, 62 S.Ct. 754, 86 L.Ed. 1016 (Wife's annuity contract paid for by divorced husband); Parshelsky v. Commissioner, 2 Cir., 1943, 135 F.2d 596 (Reciprocal annuities purchased by brothers—in part, full annuity payments held wholly taxable).

■ The second point urged upon us by petitioners is the effect of long standing administrative construction assumed to have gained Congressional cognizance and hence endorsement due to reenactment of the statute without change by subsequent revenue acts prior to 1942. Petitioners refer to

I.T. 2874, XIV-1 Cum. Bull. p. 49 (1935);

I.T. 2891, XIV-1 Cum. Bull. p. 50 (1935);

I.T. 2984, XV-1 Cum. Bull. p. 87 (1936);

I.T. 3292, 1939-1 Cum. Bull. p. 84

and I.T. 3346, 1940-1 Cum. Bull. p. 62.

We have pointed out above the doubtful construction of these advisory opinions. This argument was likewise presented with supporting cases to the Court in the Oberwinder case. It was indicated there and is reiterated here that, when the Supreme Court was referring to the effect of statutory reenactment on long standing administrative interpretation, it had before it Treasury Regulations and decisions, not mere rulings of the Commissioner on isolated transactions which do not commit the Treasury to any interpretation of the law. Helvering v. New York Trust Co., 1934, 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361. Moreover, practicality requires us to assert doubt as to the breadth of Congressional familiarity with, and endorsement of, the myriad rulings and interpretations of the Commissioner. See 1 Mertens, Federal Income Taxation (1942) § 3.24.

■ Finally, petitioners point to the enactment of § 22(b) (2) (B)[4] by the Reve-

---

[3] Compare elimination of "by him" in 1926 amendment to I.R.C. where clause had previously read "premiums paid by him", Jones v. Commissioner, 1943, 2 T. C. 924, 930.

[4] 22(b) (2)

"(B) Employees' annuities. If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23(p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration

**125**

nue Act of 1942. While it is true that by reason of the second sentence therein, the 3 per cent rule is now clearly applied to premiums or consideration paid by the employer in this sort of a situation, that is not substantial argument that a change in the law was necessarily intended. Section 22(b) (2) (B) was part of § 162 of the Revenue Act of 1942 which made elaborate provisions for Employee Pension Trusts. Although prior to 1942 the generality of § 22(b) (2) was broad enough to cover employee annuities, it was desirable upon the adoption of this elaborate pension trust scheme for the sake of cohesiveness and completeness to provide particularly for the taxation of benefits to employees which would not qualify under the Pension Trust provisions of § 165 of the Internal Revenue Code as amended, 26 U.S.C.A. Int.Rev. Code, § 165. The Congressional reports give no more than passing mention to the § 22(b) (2) amendment and do not indicate an intent to change the law. House Rep. No. 2333, 77th Cong.2nd Sess. (1942) p. 106; Sen.Rep. No. 1631, 77th Cong.2nd Sess. (1942) p. 141. Congress was motivated by a desire to encourage the establishment of employee retirement benefits and to prevent their being used solely for the benefit of higher bracket employees. We do not feel that § 22(b) (2) (B) should be construed as effecting or intending change in the law in this respect. See Hubbell v. Commissioner, 6 Cir., 1945, 150 F.2d 516, 523; Anderson v. Commissioner, 1945, 5 T.C. 1317. Furthermore the non-retroactivity incorporated into the law in § 162(d) of the Revenue Act of 1942 was obviously directed to the conceded amendments made in § 165 and § 23(p) and the new § 22(b) (2) (B) of the Code, 26 U.S. C.A. Int.Rev.Code, §§ 22(b) (2) (B), 23(p), 165, and thus need not be interpreted as indicative of an intent to change that part of § 22(b) (2) on which our attention is now focused.

On the basis of the foregoing we find that petitioners would not be obliged to pay taxes on the full amount of the sums received under the annuity contracts. No question of double taxation and consequent exclusion by implication arises. We are thus in accord with the results reached in Oberwinder v. Commissioner, supra, and Hubbell v. Commissioner, supra.

The decision of the Tax Court of the United States in each of these cases is affirmed.

---

*for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become non-forfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph."*